Case No. 24-3098, United States of America v. Calvin Smith, a.k.a. A.C.E.A. The Balance. Ms. Van Pelt, for Libby Van Pelt, Ms. Kelly, for your vote. Good morning. Good morning, Your Honors, and may it please the Court. Libby Van Pelt, for Calvin Smith. I'd like to reserve two minutes for rebuttal. The government has conceded error on Count 1, the drug conspiracy, where the District Court sentenced Mr. Smith to life, even though that sentence was admittedly above the statutory maximum. This error alone requires remand to the District Court for a full de novo resentencing hearing. The government has also conceded error with respect to Counts 19 and 20, where the District Court sentenced Mr. Smith on both, even though the parties agreed that was unconstitutional and in violation of the Double Jeopardy Clause. A number of other issues arose at this resentencing, and I'm going to start by addressing those that pertain to Count 3, the RICO conspiracy. With regard to that count, the District Court committed a cascaded series of errors. First, he sentenced Mr. Smith under the incorrect assumption that Count 3 carries a mandatory sentence of life, and I'll explain how we know that based on the context and also the actual words that the District Court both spoke and wrote. Second, and relatedly, even if he had not been laboring under that incorrect understanding, he still failed to consider, as is required by statute, Mr. Smith's individualized characteristics, which were quite compelling in this case and otherwise erred in how he considered the evidence before the Court. Third, the District Court improperly considered conduct associated with Counts 4 and 5, the vacated counts, even though the Court failed to make a factual finding that that conduct had been proven by a preponderance of the evidence or otherwise, and in fact, there's no valid basis upon which the District Court could so conclude, given that they were vacated on a fundamental ground that renders them unreliable, ineffective assistance of counsel, and also how the District Court characterized the evidence in its written ruling following the ineffective assistance of counsel hearing. Of course, if I don't... Can I ask you about Counts 4 and 5? So, what was the precise objection that was raised? Is it that Mr. Smith did not omit the underlying conduct, or was the objection simply to considering the vacated offenses? To both, Your Honor. At a sentencing hearing, in order to consider relevant conduct, the District Court has to find, after the government proves, that beyond a preponderance of the evidence, the defendant actually committed that relevant conduct. In this case... Was that objection made below clearly that way? I mean, there are a number of places where it seems that the objection may be simply to considering the vacated conduct and not whether that conduct was in fact... Yes, Your Honor. That objection was made fulsomely. If you look in the sealed appendix, which contains the pre-sentence investigation in this report, I was counsel below with regard to the resentencing hearing, and there was a fulsome objection there. In fact, I went back to the actual trial transcripts from 2002 and pulled the evidence from that trial transcript and submitted to the court, here are the findings you should make and why you should not consider Counts 4 and 5, because it's inherently unreliable, right? So that objection was fulsomely made. I also then submitted, separately from the pre-sentence investigation reports, a detailed sentencing memorandum in which I renewed those objections, and then twice at the sentencing hearing, I also raised the issue. Thank you. And so I think there's a... Actually, what I'll do is I'll return then to our first issue, which is that the district court sentenced Mr. Smith on Count 3, the RICO conspiracy, under an incorrect assumption that it carried a mandatory sentence of life. And I said earlier, how do we know that? We know that based on context, and then the actual words that were said and written by the district court. So I'll start with the context here, which I think is important. Mr. Smith's original sentencing was held back in 2005. He was jointly sentenced with five other co-defendants. Each of those other co-defendants was subject to a mandatory life sentence. So the district court sentenced those five to life, and then also at the same hearing, sentenced Mr. Smith to life. After a very brief allocation by his attorney, the same one that has been found ineffective, that attorney failed to ask for a sentence of less than life, even though one was available. At that time, the district court provided no discussion whatsoever of the 3553A factors he just pronounced sentence. Now, at the resentencing in 2024, the district court referenced that earlier sentence when he said, I must and shall adhere to my prior decision and resentence Mr. Smith to life. So given that context, it makes sense that the district court was coming into this sentence, this resentencing hearing with mandatory life sentence in his mind. Okay, so then we get to the hearing and what he said at the hearing and what he wrote afterwards. Everything at the sentencing suggests that he was laboring under this incorrect assumption, or the flip side of that is there's nothing in the record that shows that he understood that a sentence of less than life was available. So I have four different things that he said and wrote that I'd like to go through. If he thought it was a mandatory life sentence on count three, how do you explain his discussion of why he's not departing downward? If it were a mandatory sentence, he would have no reason to even consider departing downward. Well, I don't think there was a discussion ever about departing downward. He did recite some of the 3553A factors. Remember that count three was just one count upon which the district court was sentencing on him. And even if a count is mandatory life, the statute still requires that the judge- At appendix 994, he responds to the suggestion to mitigate downward by saying that it suffices that Mr. Smith has not one but multiple convictions today, any one of which would be sufficient to sustain a life sentence. That remark and the remarks that follow are inconsistent with the idea that he thought the life sentence was mandatory. I think actually that is the opposite, Your Honor. So if we start at the very beginning, the outset of the sentencing hearing, the district court announced there, I am going to, Judge Lambert said, I am going to sentence Mr. Smith above the statutory maximum on count one, the drug conspiracy. And I quote, because Mr. Smith has multiple other convictions that call for life sentences, the court sees no reason to alter its prior sentence on this count, which is similar to the language that Your Honor just recited. Now, importantly, the only other conviction that carried the possibility of a life sentence was count three. So the fact that you have the district court at the very beginning of the hearing, before we have argument, before we have allocution, saying that he's going to get life on count three, so it doesn't matter if I give him life on count one, two, that statement assumes that the district court knew at the beginning of the hearing that he was going to give Mr. Smith life on count three and that he thought he had to, okay? These remarks seem to me significant in another respect. He was refusing to depart downward because Smith had multiple life sentences. Now, or after this hearing before us, he no longer has multiple life sentences. He only has one. And so the reasoning that Judge Lambert gave for not departing downward no longer exists. Well, I don't think, I'm not sure, I may not understand the question, but at this resentencing hearing, it was a de novo resentencing hearing. He was resentencing Mr. Smith on all of the counts. Right. So, and the only count for which a sentence of life was available was count three. Right. So it was required. There was no life required. No life required. It was simply available. I'd like to point- I think Judge, I understand Judge Randolph's point, right? It's that he had previously said there's multiple life sentences and that had influences his sentencing decision. But in fact, I think Judge Randolph is pointing out that that was no longer accurate by this hearing, right?  Yes, Your Honor. That was no longer accurate. And so that language, given that it was inaccurate, suggests that he did not understand that count three did not, in fact, carry a mandatory sentence of life. And Judge Randolph, I'd like to- He said- I'm sorry, go ahead and respond. Judge Randolph, if you look too at, again, the outset of the hearing, the district court stated both the guidelines and the statutory provisions. And so the court said the statutory provision for count one is 10 years to life. Also recited the statutory provisions for the other counts. Then it said twice, the statutory provision for count three is life. And again, the statutory provision for count three is life. So for the other counts, he gave the sentencing range available to him by statute, right? The mandatory minimum up to the maximum authorized. But for count three, he just said life, suggesting that there was no range because the only available sentence was life. And as someone who does these cases in the trial court, that is how you say it when it is, in fact, a mandatory life sentence. So that's another thing he said at the sentencing hearing that suggests that he was laboring. What did he say in his written explanation for the sentence? So in the written explanation, and that's at seal dependent 63, he uses language that's similar to what he said at the outset of the hearing. He says, well, I'm going to sentence him on both counts 19 and 20 because, quote, Mr. Smith would have received a life sentence anyway on counts one and three. And then separately on that same page, he writes that he was reimposing life on count one, even though it was above the statutory maximum, quote, because he would have received a life sentence anyway on count three. So that suggests, again, that the district court is thinking about the sentence for count three as mandatory. Otherwise, you simply would not say and write, I'm going to give him life on count one because he's getting life count on count three anyway. If count three is not mandatory life, that reasoning simply does not make sense. And also the verb tense, right? He didn't say because he received life on count three, he would have received it. The other place in the record where the district court makes statements that suggests, again, that he thinks count three is a mandatory life count is in the record in the appendix at 994, the same page that you referenced Judge Randolph, where the district court says, in order to communicate that our society simply will not tolerate such terrible acts, no matter what the personal circumstances of the person committing them, this court must and shall adhere to its earlier decision and re-sentence Mr. Smith to life in prison. Must and shall are command verbs that create non-discretionary sentencing outcomes. Federal courts treat them exactly the same and they treat them that way. So if you look at statutes, if we take the word must, the Armed Career Criminal Act uses the word must to impose a mandatory minimum sentence. It says in the case of a person who violates this section, that person must be in prison, not less than 15 years. Also, if you look at- with him thinking that because of the nature of the offense and other factors, I've got to sentence this guy to life, because otherwise I don't communicate to society how grave, how horrendous this criminal act was. But that's not what he said. I would agree with you if the district court had said, after considering all of the 3553A factors and looking at Mr. Smith individually, this crime outweighs all of those other factors such that the only appropriate sentence is a life sentence. But that's not what he said. He did not say he was exercising his discretion and that was what he had decided. Right after the statement that I just said, or the statement that I was just quoting and you were, followed immediately after he said the sentence was warranted because of the nature and circumstances of the offense. That's consistent. That is consistent with it being a mandatory life sentence and the district court imposing a mandatory life sentence. There's no inconsistency whatsoever there. And also I'll note that that statement- There is inconsistency when he continues and says that it's also warranted because of the history and characteristics of the defendant. If it's mandatory, the characteristics of the defendant don't matter. Well, you're still going to get a mandatory life sentence on that count, but you still have to follow the statute and recite those. And I'll also note, Judge Randolph, that in that sentence, the must-and-shall sentence, if you will, the district court was not specific to Mr. Smith. What the district court said was that for this particular crime, the court must-and-shall impose a life sentence regardless of the individualized circumstances of this defendant. That, again, is a judgment that Congress makes, right? Because Congress has various statutes that impose a mandatory life sentence where we have Congress telling the courts, don't consider nothing for this particular crime. No factor can outweigh the seriousness of this conduct, and so we're going to impose a mandatory life sentence. Do you have any more questions? Great. Perfect. Thank you. We will give you your time for rebuttal. Thank you, Your Honor. Hearing from the government now. Ms. Kelly? Thank you, Your Honors. Catherine Kelly on behalf of the United States. Your Honor, in this case, the government has conceded that there was error in regard to sentencing on count one, the life sentence on the narcotics conspiracy, and that it is necessary to vacate count 20 due to merger principles, but that it does not require re-sentencing. It can simply be done- Count one requires re-sentencing. Correct, on count one itself. But beyond that, though, there's- This judge was looking at sort of the whole picture of all the sort of multiple life sentences that were out there. If you actually vacate one of those life sentences- Well, the court- Doesn't that- I'm sorry. Sorry, I wasn't quick enough on the draw there. Doesn't that suggest that it would be best if the district court would go back and just consider the sentencing on, again, in light of both of those changes? I don't think it's- It seems to be synergistic in the sentencing process, and that's sort of how it's supposed to be, particularly the 3553 factors. But when you have a judge who said many, many times, look at all these crimes, look at all these life sentences, and if it turns out there's no mandatory life sentence at all, the one that he thought was life was capped at 40, and another one of those life sentences had disappeared, why wouldn't it be fairer to the district court judge to just leave it to that judge to decide whether that vacature makes a difference? He could say it doesn't. It just seems to me it's fairer to the district court judge to let the district court judge look at the whole picture on remand rather than tying his hands. I mean, the court certainly could do that, and we're not saying that it couldn't. There's nothing wrong with doing that. There's nothing wrong with doing it. We would just say simply, particularly because none of the other errors that defense counsel has raised were raised to the court. Most of the other arguments were on plain error review. I'm not sure that's got to do with it. There's really no reason... Conceded plain error on count one, and count three was preserved. There are objections to count... We conceded error on count one. That argument was preserved at the re-sentencing. I'm sorry, you're right. But the others, in particular, on count three on the RICO conspiracy, we don't believe was preserved. There was no indication during the re-sentencing hearing that defense counsel was concerned or was presenting an argument notifying the court that it believed it was making an incorrect statement that the court was indicating that both the mandatory maximum under the statute and the mandatory minimum were life. So given what the court actually said, and particularly what Judge Randolph has pointed out in regard to the court not needing to say that it wasn't going to depart from the guideline sentence of life if it truly believed that there was a statutory requirement that it be life, there's just, given those statements, there's no reason to believe that the court made any errors on count three. The count, sorry, and correct me if I've got this wrong, but the count three one, for the RICO conspiracy to become life depended on the judge's reliance on the dent murder. Is that correct? Actually, no, Your Honor. Did I have that wrong? In footnote 25 of the pre-sentence report, it says that even if you take out the dent murder and CCE murder, counts four and five, that it had no overall effect on the total offense level, which is 43. He said he was relying on the dent murder. He said that. He said he considered it, but- He said that's what he was relying on, and the only relevance would have at this point would be to bumping count three up to life, correct? I believe the way the court framed it, he was talking about, at the beginning of the resentencing, defense counsel raised three objections that the court ruled on, one of them being that the court should not consider in any manner the dent counts four and five. And the court said in a generalized statement that it believed under United States versus Watts that it could do so, and then- I want to ask something. I'm not being clear about my question. I'm sorry. Where in the record, as I read the record, he was relying on the dent murder to get this up to life. You have to find something to move it up to life under count three. The only thing I see discussed is the dent murder. Is there a place where he said he was relying on something else to bump that up to life? I don't recall there being any particular statement about what he was using particular to count three. Do judges need to identify the basis on which they are determining that this recall conspiracy count is now a recall conspiracy count in the category that's eligible for life sentence? It wouldn't otherwise be. Right, right. You have to identify that, right? They have to- I believe so. There were numerous RICO acts, rectearing acts. I understand, but the one that he pointed to, and that means a lot, this is the judge is the one that's there. The judge gets the discretion. The judge is the one making this decision. And the only thing he relied on was the dent one, dent murder, correct? I just see that would have been an item that the court relied on. However, I believe that this court statement was more general because I was talking on page A948, which is where this was briefly discussed. I'm asking what the, just now what we said, I'm asking what the district court relied on, and it was the dent murder, and we haven't been able to find anything else, correct? But the district court said he was reliant. District court had to identify the basis. District court pointed to the dent murder. That's what we got. That we do have that, but we also have the PSR statement that even without consideration of the dent murder, that those, the total offense level for the RICO conspiracy would not raise. I can get the court's quote. I understand, but the PSR is not making the decision. The judge is making the decision. No, it's not. The judge is to identify it. So I understand the point you're making, but the judge didn't do it. But the court did accept, as did the parties, and the parties agreed that the total offense level for the RICO conspiracy was indeed 43. Is it an offense level that bumps up the RICO conspiracy charge, or is it the identification of a particular racketeering act? Actually, the PSR, Your Honor, says that racketeering act 22, which was the dent murder, was used in paragraph 145. However, the court did say, or no, I'm sorry, I'm misspeaking. The PSR did say that the removal of counts four and five in racketeering act 22 would have no overall effect on the total offense level. Right, but that's because, I assume the PSR was assuming you can consider dent anyhow, the dent murder anyhow, which you talked about, right? No, it says, however, should the court determine racketeering act 22 is also invalid, racketeering acts one and nine would be grouped with another of the murder racketeering acts, and ultimately the total offense level for all of the counts would not change. It would remain 43. Okay, so I think that's a different point. So what I'm trying to focus on here is I thought you agreed the district court needs to identify a racketeering act as the basis for upping that sentence to the life range, right? The statute says, if you find, then the cap is life, correct? I believe so, your honor, yes. Okay, and so, and the one that district court identified, PSR identified was the dent murder. And when it was suggested that you shouldn't rely on the dent murder, the judge said, no, I can rely on the dent murder even if the count is vacated, right? Correct. That's how the sentencing proceeded. But I thought it was also pretty crystal clear that the judge, when something, when there's an acquittal, the judge has to find that the murder occurred by a preponderance of the evidence, correct? Correct, but they can't do it. They can do it, but they have to find where in the record did Judge Lambert find by a preponderance of the evidence that Mr. Smith committed the dent murder? It did not specifically state at any point that it was finding by a preponderance of the evidence. Did it make a finding or not? Yes or no? It did not. It did not make a specific finding. It did not make a required finding to rely upon that. Okay, thank you. However, I would also say that this was not an issue that was raised at the hearing. The defense counsel never asked for a specific finding and that you can also tell from the ineffective assistance of counsel decision that... No, I'm talking about this resentencing. No, I understand, Your Honor, but I don't think that there's any question that the court could find that. But didn't? But did not, yes. So as to the... Is that a plain error? I believe it would need to say that specifically. But beyond that, there's certainly no question in the additional points defense counsel made that the court considered Mr. Smith's personal circumstances specifically said that. The court made statements that it had clearly considered his circumstances and acknowledged expressly that it was required to consider the 3553A factors, including the history and characteristics of the defendant. It acknowledged Mr. Smith's plea for leniency. It recognized that he was youthful at the time of his offenses and that it was arguable that his disadvantaged home life led to his criminality and his rehabilitation and so forth. But it understood that it was impossible, as the court said, when it weighed those to overstate the gravity of Mr. Smith's offenses, that he was deeply embedded in the drug trafficking conspiracy that claimed many lives and helped to aid the district status as a murder hotspot. So the statement that it must and shall impose a life sentence, no matter what Mr. Smith's personal circumstances were, is out of context. The court, even before making that statement, was talking about all these factors that it recognized and had considered. And the fuller statement, the court was saying that it was to communicate to our society that it will simply not tolerate such terrible acts, no matter what the personal circumstances of the person committing them, this court must and shall adhere to its earlier decision and re-sentence Mr. Smith to life in prison. That is certainly not a reflection that the court was laboring under a misunderstanding that it was statutorily required to just simply re-sentence Mr. Smith as it had in the past. The court definitely considered this rehabilitation. And although we have not gotten into it, we certainly believe that Judge Lambert is the most appropriate judge, particularly considering his lengthy history with this case to re-sentence Mr. Smith. Thank you. Thank you very much, counsel. We will give you two minutes for rebuttal. I recognize that this is not something that your honors are doing routinely, but in this case, I think reassignment is appropriate. Looking at the Wolf factors, the court does not have to find that Judge Lambert is biased or incapable of doing a third sentencing hearing in accordance with the law or unable to put out of his mind the lengthy history with this case and all of the various co-defendants. Even setting all of that aside, fundamental to our judiciary is public confidence in the impartiality of judges and the proceedings over which they preside. And so I think the delay in this case is significant. And maybe one of the most important cases in my brief is the Hernandez case, because it bears so many similarities to the case that we have here. That's also a case where the Second Circuit remanded a case to a district court to hold a hearing. And the district court waited over 10 years to hold that hearing. And then when it held the resentencing hearing, it again committed errors. In that case, the Second Circuit took an additional step of reassigning the sentencing for three reasons. Some of the delay here was not due to Judge Lambert's delay. There were delays that were a result of the reassignment of counsel and other things. Some of the delay may have been the district court judges, but certainly not all of it, or maybe even the lion's share of it. Well, I think it was the lion's share. So, for instance, Mr. Smith filed a 2255 out of an abundance of caution in 2014, noting that, Judge Lambert, we still need to hold this ineffective assistance of counsel hearing. The district court did not rule on that motion for seven years. It took the district court seven years to rule that that motion was premature. At another point, Mr. Smith's counsel filed with the court a notice that a hearing needed to be held, and the district court did not act on that filing for over three years. At one point, Mr. Smith's counsel filed a motion to withdraw, citing a conflict. The district court did not rule on that motion or appoint Mr. Smith another attorney for a year and a half. So I think there were delays to even do like routine, simple things in this case. And so the question then becomes returning to what the Second Circuit cited in Hernandez. You know, there's a couple reasons why just for the appearance of justice, right, there were dozens of people in the courtroom at this hearing. There will be going forward. An objective observer might question the judge's impartiality given this gap. And so Judge Calabresi in the Second Circuit wrote, when a judge has, through a combination of the judge's own inaction of some government neglect and Judge Rao, perhaps of the prisoner's lack of complaint, failed to act for some, in that case, 15 years, an objective observer might question the judge's impartiality regardless of the result the judge ultimately reaches. And the judges in that case then talk about, even if the defendant is then sentenced below or the same or above what the original sentence is, an objective observer could still walk away thinking here that this is not how we should conduct court proceedings in this country. So any further questions for my colleagues? Okay. You want one sentence to wrap up and then... One sentence, Your Honor. Life is an extraordinary sentence. It means a denial of hope. It means that good behavior and character improvement are immaterial. It means that whatever the future might hold in store for the mind and spirit of the convict, he will remain in prison for the rest of his days. Mr. Smith deserves a fair sentencing hearing. Please vacate his convictions and remand to another judge. Thank you very much. Ms. Van Pelt, you are appointed by this court to represent Mr. Smith in this case. And the court thanks you very much for your assistance. Thank you, Your Honor. The case is submitted.
judges: Millett; Rao; Randolph